Defense matter, number 23-1946, Dickens-Etienne v. Michel Edmark. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. My name is Michael Eaton on behalf of the petitioner Dickens-Etienne. May it please the court. Your honor, may I reserve two minutes of my time? You may. Thank you. Your honors, this was a close case at trial. Mr. Etienne had a strong self-defense case. The decedent charged Mr. Etienne and others at their own home with a loaded gun in his hand. He pointed it at one of the men. Witnesses heard him threaten to use it. Jose Gomez produced the only direct evidence, and by far the most powerful evidence, that this was a premeditated murder. He was the only one to testify that the defendant purportedly... You're quarreling with the New Hampshire Supreme Court factual findings that, in fact, there was a lot of other evidence of premeditation, totally apart from the issue of Gomez's testimony. Yes, yes. Well, I thought you had to accept that. I don't think we have to accept it for a couple of reasons. The first is I don't believe that the characterizations and inferences that the court drew from the record are determinations of fact. This court in Tregones v. Bissonnette indicated that inferences, characterizations of the fact, and mixed law fact conclusions are more appropriately analyzed under 2250. I'm sorry. Are you saying that the New Hampshire court was wrong, that the record did not provide such evidence, or that they were wrong, that the evidence tended to show premeditation? Both, Your Honor. And nothing in your brief calls any attention to the transcripts that argues that there's an error of fact? That's not how you presented the case, either to the district court or in the briefing to us? Correct. And I think it's an unreasonable... So you can't do that at oral argument? Well, I'm not quarreling with how they used those facts and the characterizations they made from the record. What I'm quarreling with is two things. One, they relied on a sufficiency of the evidence argument primarily in rejecting the Brady claim, which Kyle says. I don't think that's accurate. They said that there was overwhelming evidence of premeditation. Correct. So you have to show it was unreasonable to conclude on this record. Now, that is not a factual determination that it's overwhelming. That's the application of the Brady standard. So that can be unreasonable application of the Brady standard to conclude that these facts show an overwhelming thing. I take it that's your argument? Yes, Your Honor. So why is it not overwhelming, given they lay out about 10 different things that they say make an overwhelming case? What's wrong with their account? So I do acknowledge that that balance of evidence does go in part to motive and there is some consciousness of guilt evidence. But what they don't touch on, that evidence doesn't touch on, is the elements of premeditation. The state had to prove that Ms. Retien considered and decided in advance to commit murder. What about this? This is one thing I'm a little confused by. In the course of their recounting of the overwhelming evidence, one of the pieces of evidence they cite is the statement by Gomez to Detective Lappy in which he says, I'm going to murder him. Correct. Which the defendant is reported to say to Gomez, I'm going to murder him, which would seem like pretty good evidence of premeditation. It would, but that comes from the compromised witness. Well, this was a little bit of a puzzle to me. In the New Hampshire Supreme Court's opinion, crediting the first prongs of Brady, they then go on to decide, is it material? And in doing that analysis, they say, we're going to set aside the Gomez testimony and assume it wouldn't be believed. And now we look, having made that decision, is the evidence nonetheless overwhelming of premeditation? And they say, yes, it is in part, and I would say in significant part, because of the statement by Lappy about what Gomez told him. Right. I didn't see in your brief saying that was error to consider that statement. It's not the testimony of Gomez. That's what the New Hampshire Supreme Court says will be excluded. That's what you were trying to exclude. So what do we do with the fact that there is this evidence, independent of Gomez's testimony, of Gomez reporting that the petitioner here said he would kill him? Right. And that's why I think the timeline of how this proper letter came about is important. So Gomez was arrested after the shooting and charged with crimes relating to hiding some of the guns relating to the shooting. Then he was let go. He said nothing about Mr. Etienne at that time. Then he was let go and rearrested on the drug charges that are the subject of the proper letter. And that's when he asked for a deal. And then he provides the statements that you're referring to. The statements to Lappy? Yes. And did you make the argument to either the district court, the New Hampshire Supreme Court, or to us that it was error to consider the statement from Gomez to Lappy as opposed to the Gomez testimony? I think that was wrapped up in the argument.  Any statements coming from Gomez in light of the proper letter. Is there a part where you say that? Any statements? I don't know that. As opposed to just the testimony? I don't know that I say it as directly, but I mean. There's a way of saying it directly and then there's a way of actually not saying it because you only say testimony. Fair point, Your Honor. I can't say for certain whether I said it directly or not. But I think that the broader argument here is that whatever Gomez provided to police. How important is it to your case that it was error, that it would be error for the New Hampshire Supreme Court to have considered the Lappy statement that Gomez made? I don't think it's as significant, certainly not as significant as Gomez's testimony. I think it is. It's part of the equation. Yes. That Lappy's statement accounting what Gomez had told him after he was rearrested on the drug charges and asked for a deal, that may carry some weight. But of course, it's not coming from Gomez directly. I think Gomez's testimony was by far the most damaging in the case. What I do want to touch on a little bit, though, is the balance of this alternative evidence of guilt. And I'd like to refer to a case from this court in a 2254 petition that it granted. It's a case called O'Loughlin v. O'Brien. And it dealt with a sufficiency of the evidence argument with respect to a murder conviction. And one of the cases that it relies on is a case called Juan H. v. Allen. And that case involves some significant parallels to this case. So there was a lot of evidence of motive in that case, interpersonal tensions, which of course played a big role in this case. Evidence that the defendant had assaulted the victim in the past. And then consciousness of guilt evidence, similar to what Mr. Etienne did, flee from the scene, an attempt to flee from the home, and then concocting a fake alibi. And what the Juan H. court said, and this court relied on that conclusion, is that as to both motive and consciousness of guilt, it's too speculative to support an intent to commit first degree murder. And I think that's part of what the state court missed in this case here. Is that while that might be evidence of motive, and I acknowledge that it does go to motive and it does go to consciousness of guilt, it doesn't directly address the elements of premeditation. Only Gomez did that. Either in his statements to police, certainly in his trial testimony, he pinned Mr. Etienne as this cold calculating killer. Someone who had, you know, because of issues he had with his girlfriend and sense of disrespect on behalf of the decedent, decided that he wanted to kill the decedent. Voiced that concern or that consideration to Gomez, and then on the day of the shooting, voiced his decision to do that. You know, the habeas constraints under which the federal courts operate, don't ask the question, would we have balanced it differently? The question is, can we say no reasonable state Supreme Court in this country could possibly have balanced it the way they did? So you, focusing on the, how can we say no state court could reasonably possibly have reached the conclusion it did? And I acknowledge that it's a high burden, Your Honor. And in most cases, reasonable minds could differ. I think this case is one of those extreme cases. And it's an extreme because Mr. Etienne had a strong self-defense case. I mean, the decedent, it was undisputed that the decedent had a loaded gun in his hand. And I guess you're saying the question we're asking is, given the powerful nature of the Gomez testimony, did it have an influence? And then the question is, could a juror reasonably think it didn't have an influence? And the thing that would cause that would be the overwhelming nature of the premeditation. You're just saying here, no one reasonably could think this was that overwhelming that we could have confidence that this statement didn't have an influence. Exactly, Your Honor. Yeah. And I think the O'Roughen opinion supports that with respect to the quantum of evidence, aside from Gomez's testimony. At least if, I mean, it's not as if, just so I understand your argument, it's not as if New Hampshire Supreme Court was saying, well, the statement itself wasn't that big a deal. At least as they write the opinion, they say, we're going to assume because of Brady error, we should discount it entirely. So the only ground they give for finding no Brady problem is because no prejudice in consequence of the overwhelming evidence of premeditation. Exactly. If that's wrong, we would still have to do de novo review. Correct. Correct. Yeah. And I think under either of these standards, whether it's the heightened standard or de novo review, then the facts do support that. I do acknowledge, though, Your Honor, that there are certain cases where the overwhelming nature of the evidence can form the basis of rejecting a Brady claim. But I think, and I'll cite a Ninth Circuit case, Paradis v. Arabe, which indicates that, yes, overwhelming evidence of guilt can support a verdict if the undisclosed exculpatory evidence undermines only a small part of the prosecution's case. And here it undermined a central part. I think for that, to understand this fully, we have to go back to where Gomez's testimony was in the context of the trial. He testified on the... Just to be clear, is your argument that there was an unreasonable application of federal law or an unreasonable determination of the facts? Unreasonable application of federal law. I don't think the court, the state court, determined any of the relevant facts. Instead, they drew characterizations from facts that had already been developed. And under this court's Tregone's case, I think that's analyzed under the unreasonable application of federal law standard as opposed to the facts standard. But I guess there's two different things that are going on. They make various statements in the New Hampshire Supreme Court opinion about why various pieces of evidence do or do not tend to show premeditation. And you could be quibbling with each one. You could say, well, if you actually look at the letter that was written, it didn't really say that. If the conversation between Pierre and the other person, we don't know who said what. That's one. And you're saying that's not a factual dispute. That's a characterization. So that's reasonable application. But the other thing you could be saying, and I thought you were saying, is take all their characterizations as true. But it's just not overwhelming, given the factual scenario that was here where there was a self-defense and no one reasonably could think it was that overwhelming. Therefore, we still have doubt as to whether the Gomez testimony matters. Yes, I'm saying both, Your Honor. And I think under either analysis, the claim would succeed. I'm out of time. Thank you, counsel. At this time, counsel for the government, please introduce yourself on the record to begin. Thank you, Your Honor. Good morning. Elizabeth Woodcock for the warden of the New Hampshire State Prison. I just want to make two quick points that were raised in the trial brief, and then I'll entertain the court's questions. The first thing that I wanted to say was that there is a suggestion in the reply brief that this should go back to be remanded back to Judge McAuliffe for a finding on the merits. And actually, that's what Judge McAuliffe did. When the warden raised the issue of the timing, the untimeliness of the Brady claim, Judge McAuliffe decided that it was in the best interest of the court's calendar. And the most efficient way of dealing with this was not to go through equitable tolling, but to ask the parties to brief it on the merits. And so we did do that, and Judge McAuliffe did not hold the petitioner to the high standard of equitable tolling. He simply said that it's in the best interest of the court's calendar and time and everything else. What is the best use of the court's time? So he held them to a lower standard, and then he decided the matter on the merits. Just so I understand that, though, if presumably if we were to agree with petitioner's argument that there was an unreasonable application of Brady because it was unreasonable to conclude that the evidence of premeditation was overwhelming, we would then remand, not grant the petition, right? I think that you would remand it for action by the United States District Court. And are you saying that the action by the District Court at that point could not include dismissing the petition for being untimely? No, I'm not saying that. I'm saying that, but what they had suggested was that it should be remanded for a consideration of equitable tolling. First, in other words. I see what you're saying. I got it. I see what you're saying. What Judge McAuliffe said was, you have a good argument that it's untimely, but I'm not going to address it. But that issue still remains potentially as a barrier to the petition being granted. That's correct. And he dismissed that argument as moot because he had decided against it on the merits. The second thing that I want to say is that... But why do you want... I'm just curious as to why you're arguing that today. I'm raising it, Your Honor, because they had suggested that this court should send it back for a determination of whether equitable tolling applied. And I suggest to the court that right now, if the court looks at what Judge McAuliffe did, he already essentially applied a lower standard than equitable tolling. Now I'm confused again. Are you saying, therefore, that the equitable tolling has been resolved in petitioner's favor or simply that we shouldn't bypass the merits and remand for an equitable tolling ruling? We should just address the merits. If they win on the merits, then it goes back for equitable tolling. If they lose, that's the end of it. That's my argument, Your Honor. I'm sorry. Could you get to your merits, please? Yes. With respect to the issue of premeditation, the New Hampshire Supreme Court took a number of different witnesses. And when you consider this case, you have to consider that this was a group of people who were all living together in the same apartment buildings. And they were in and out of each other's apartments all the time. So when you look at what the New Hampshire Supreme Court considered just on the issue of premeditation, they noted that the victim had told Tina Gopas, who was one of the women who lived in this group of people and was associated with Mr. Etienne and the victim. The victim told Tina Gopas that the petitioner or Mr. LaPierre, Louis LaPierre, was going to kill him. Then you have the statement by Jenna Battistelli, who overheard the petitioner and Mr. Pierre talking about how the victim was going to get his. The petitioner was angry at the victim because he had made suggestions to Mr. Etienne's girlfriend, Camille Jette. So he was angry at him because he'd made these sexual suggestions to her and he banned him from his house. The night before the shooting, the petitioner was upset that the victim had gone to Jennifer Hannaford's house and Jennifer Hannaford testified to that. The night before again, Tina Gopas testified to an argument between the victim and the petitioner. David Garcia talked about how the petitioner was angry and then when they were driving back from Foxwoods, there's a part of the thing that may not make too much sense to the people who don't live in New Hampshire, but the petitioner told the victim that he was in Nashua, when in fact he was in Bedford, which is just south of Manchester. And the reason that he did that was that he wanted to get to Central Street first so that he would be there ready for Larry Lemieux when he showed up. And then you look at what happened in the terms of the shooting and there are a number of witnesses who were there and the description is that Mr. Etienne went around and stood behind Larry Lemieux. And fired a gun below his right ear, severing his spinal cord and killing him almost instantly. And that point I think is really worth bearing in mind because we had a hearing on a number of different issues related to Mr. Etienne's post-conviction claims back in 2017. And I think that it was Tim... Are you saying that that latter fact goes to premeditation or what's the relevance of that latter directly below the ear fact? Well, the point that I was going to make, Judge Thompson, is that when Tim Landry, who was one of the defense attorneys, was testifying during that hearing, someone, and I can't remember if it was Don or Brown or me, asked him what the most difficult point of the case was. And he said that it was the direction of the bullet. He said that there were a number of other things that you could explain that these, you know, these statements that Mr. Lemieux was going to get his or something like that, that you could attribute that to just bad feelings among the people. But that he walked around behind him and pointed the gun directly in the back of his head and pulled the trigger. Tim Landry said that that was the most difficult point of arguing either self-defense or not premeditation because he had armed himself to go to this fight. He and Mr. Pierre had gone and gotten weapons before they met Larry Lemieux. And that's why they were telling him that they were in Nashua rather than Bedford, to give themselves time to go and arm themselves. So the evidence of premeditation was very strong. And the testimony of the witness who's being challenged now was not essential. And he was very, very thoroughly cross-examined. And the New Hampshire Supreme Court makes a point of that, that Gomez was, he was, I think at times if you read the transcript, he seems almost flippant in his responses to some of the cross-examination. But he, they asked him over and over again, aren't you in this to get a better deal? The problem with those questions were, of course, that Gomez had already been sentenced by the time this case went to trial. So even though the state hadn't turned over this proffer letter, Gomez was going to get nothing out of his testimony. And his argument is that he got a lighter deal at the, at the drug case, in the drug case. He did, but, but as, if you read the, the testimony in the motion for a new trial, the reason that he got the, the lighter deal was that the assistant attorney general saw that he already was facing a fairly significant charge on county charges. He was getting three to six years. And what Ms. Marl explained, Judge Thompson, was that she determined that if she could get a suspended sentence over Mr. Gomez of three and a half to seven years, suspended for ten years, she could try to keep him from committing any new crimes. And that that was a benefit to her, to be sure that he would not continue to be involved in drug dealing, which is what he'd been picked up for. He had been picked up initially. How is this relevant to the prejudice analysis by the New Hampshire Supreme Court? They don't rely on any of this in concluding that there was no prejudice arising insofar as we assume the Gomez testimony needs to be treated as not consider, not worthy of consideration at all. It's, it's relevant simply because Judge Thompson was raising the question. I'm not saying that you shouldn't have answered the question, but with respect to the question of unhabeas, did the New Hampshire Supreme Court unreasonably apply the Brady standard of materiality? No. Their sole argument is based on the overwhelming nature of the evidence, assuming that we discount the Gomez testimony, right? That's correct. Yeah. And the evidence was indeed overwhelming. Can you just address the Lappe testimony? The New Hampshire Supreme Court seems to rely on the fact that Gomez told Lappe that the petitioner would kill the victim. Right. And it included that as a integral part of its analysis, or at least a part of its analysis of why the evidence was overwhelming. Well. How can that be considered if at the same time it's crediting the idea that Gomez should be treated as not credible in light of the Brady error? I think that it was another piece of the puzzle that they were putting together. How can it be a piece of the puzzle if, in consequence of the Brady error, the New Hampshire Supreme Court is saying we're not, we're going to assume that you can't consider the Gomez testimony? What's the difference between the Gomez statement to Lappe and the Gomez testimony? All of it's during the period of time in which, on their theory, he was a cooperator and the jury was not informed of that, and they weren't known about that, so they couldn't exploit that to show don't listen to that. I think I know what the court is asking. I think that the answer to that question, and I don't think that it's clear in the opinion, but if you look at what happened as a timeline here, Gomez talked to the Manchester Police Department when he got arrested the second time when he sold the drugs to the undercover police officer. And that conversation took place before there was any proffer letter or anything of that sort. That occurred, the proffer letter was signed according to Ms. Marl's testimony in the motion for a new trial. The proffer letter was signed on May 7th. And this conversation with Lappe well predated that. Was it February or something like that? Pardon me? Was it February or something like that? It was probably February. The homicide took place at the end of January, Your Honor. So I think that that's what the court was going. I think it could have been clearer on that point. But setting that aside... And was there any challenge, as you read the record, made to consideration of the Gomez statement to Lappe, either in the state courts or in the district court? No. And the court, I think that the New Hampshire Supreme Court noted that the testimony was not objected to in its opinion. The Lappe testimony? I think that's right. Got it. So in any event, the evidence against Mr. Etienne was indeed overwhelming. The New Hampshire Supreme Court did not misapprehend the facts and it did not misapply clearly established federal law. In fact, it cited all of the federal cases and applied them as they had been applied in the past. So there is no reason to go back and try to undo this homicide conviction simply on the basis that the proffer letter and the subsequent plea offer that, as Judge Thompson and I were discussing, turned out to give him a significant suspended sentence. There's no reason to consider that as something that has totally undermined the fairness of the trial. Thank you. If the court has no further questions for me, I will yield to my colleague. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record to begin? You have a two minute rebuttal. Thank you again, Michael Eaton for the petitioner, Dickens, Etienne. I just want to, I want to address a couple of small points here. Going back to the conversation about the defendant, where the defendant shot the decedent. It doesn't tell us anything about premeditation. What it might tell us is that. Oh, it does. That shot was meant to kill. It was not meant to wound. He could have shot him in the shoulder. He could have shot him in the leg. I think, I think those are all reasonable inferences. Yes, Your Honor. But it doesn't tell us about the elements of premeditation. It could tell us that it was, excuse me. That he, I'm sorry, why doesn't it show that he had a gun, he went and got a gun, he brought it, he walked behind, and he shot him in a way that you would not shoot someone unless you intended to kill them. Why isn't that evidence of premeditation? So there are multiple people who had guns, and it's, of course, consistent with a self-defense that, you know, you would arm yourself knowing that. And walk behind someone and pull the pistol out and put it to their head, that's self-defense. Which happened immediately after witnesses testified that they heard the decedent threatened to use his own gun. But I don't disagree that that evidence could go to intent to kill, but it doesn't tell us anything more than perhaps knowing murder, or reckless murder, or maybe even manslaughter, or heat of the passion, heat of the moment crime. Certainly, it could indicate an intent to kill, but it doesn't tell us anything about the consideration and decision in advance to commit murder. Okay, so under New Hampshire law, if there is a spur-of-the-moment decision to kill someone out of anger or something else, which requires you to take several steps, is that not premeditation? It can be, depending on the facts, and I think Gomez was the one to establish that. Thank you, Your Honors. Could you just address the point about Detective Lappy's testimony that your opponent just described, the proffer letter post-states the statement to Lappy, is that true? It does, yes, it does. But, of course, it reflects his cooperation in the past. I thought he didn't get the proffer letter until December, whatever the date. There was some delay in the prosecution, and so it wasn't passed on to defense counsel until months later. I believe, as Attorney Woodcock indicated, that it was issued in May, and I believe there was a follow-up. No, no, no. That's the date on the letter. The question is when it was given to defense counsel. I don't know that date for certain. I believe it was before trial, and certainly can be. I guess I'm not understanding the cooperation occurred, but your thought is he already knew at that time that he was told the cooperation would be beneficial to him when he made the statement to Lappy? I'm sorry, can you say that again? I'm just not following your theory. The Brady problem arises from the proffer letter not being disclosed. Right. And so what is the significance of the fact when you say the cooperation was already occurring? I'm just not following. Right, so the proffer letter extends this deal in light of the cooperation that Gomez had provided. So one inference can be drawn that the cooperation here was the statements he made against himself. But that's much weaker than the inference that could be drawn that the testimony that followed the proffer was because of the proffer. Correct. So that means the fact if it wasn't raised to the New Hampshire Supreme Court or the district court, that the statement to Lappy should be treated the same as the testimony given at trial. That's a pretty big thing not to say, oh, and I'm arguing they're the same. Well, but the substance of the testimony in the statement to Lappy were the same. Yeah, but the theory about whether there's a Brady problem with both is not the same. Right, but it certainly... If there was no argument under Brady as to both, then I don't see how we can then assume here that it was error for the New Hampshire Supreme Court to rely on the Lappy statement. Well, I guess just in closing, I would refer to the Amato case, which dealt with, I think, even weaker Brady evidence. And that was simply that the witness was on probation when he gave statements to police and testified at trial. And that, for the Ninth Circuit in that case, was enough to say that the jury could draw an inference that he had motive to lie. We're not the Ninth. That's very true, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.